WILLIAM ORMSBY *versus* WILLIAM ANSON & *Trustee.*

Where the principal had performed services for the person summoned as trustee, and the latter had given the former a negotiable note in payment on the same day the process was served; and where the supposed trustee had deceased after the service and before making an answer, and his administrator came in and made a disclosure, and stated that "*the note was given to the best of his knowledge prior to the service of this trustee process;*" *it was held,* that although the answer might not have been satisfactory, if the intestate had remained alive, yet that being made by an administrator, it was sufficient as the best evidence.

If the intestate was not liable to pay for the services at the time of the commencement of the trustee process, no arrangement made after his death by the administrator by which the principal first became entitled to payment, could authorize a decision that the intestate was liable at the time when the process was served upon him.

THIS suit was commenced by William Ormsby, who has since deceased, and of whose estate H. H. Boody has been appointed administrator, against the present defendant; and John G. Deane was summoned as his trustee. Before any answer was made by him, Col. Deane died, and Rebecca D. Deane was appointed administratrix of his estate, and she came in and made an answer. From this answer, which was somewhat extended, it appeared, that J. G. Deane was one of the commissioners appointed by a resolve of the Legislature of this State to run the northeastern boundary line, and that they concluded to make a map to accompany their report. As the State had appropriated no funds to defray the expenses of the survey, the commissioners determined to incur no personal responsibility, and therefore stated to all they employed, that they could expect nothing for their services, except from the State, and what the State should allow them individually. The commissioners kept an account of the amount of services, and handed it to the Governor and Council, and it was allowed by them and the Legislature to each individual. Anson was employed by Deane in behalf of the commissioners, and his bill was among those thus handed in. He was paid for his services up to January 1, 1839, by the State. Since that time Anson labored fifty days in finishing the map. This account

was presented to the Governor and Council, and also to Deane for payment, but payment was refused by each. Deane gave Anson a certificate of the time he was employed, as a voucher, to be laid before the Governor and Council. Prior to the service of the trustee process upon him, Deane had employed Anson upon some work of his own in preparing a map for publication of the same territory for his own benefit; and had from time to time advanced money on this account. At the time of the service, Anson was indebted to Deane to the amount of fifteen or twenty dollars. Deane had given a note to Anson, and the fifth interrogatory put by the plaintiff to the administratrix of Deane was, "Was said note for seventy-five dollars given by said John G. Deane to said Anson, on the twenty-seventh of April, prior to the service of the plaintiff's writ on said Deane on that day?" The answer by the administratrix of Deane was, "The note of seventy-five dollars was given, to the best of my knowledge, prior to the service of this trustee process."

The case was submitted on the briefs of the Counsel.

*F. O. J. Smith,* for the plaintiff, cited *Cleaveland* v. *Clap,* 5 Mass. R. 201.

*Fessenden, Deblois & Fessenden,* for the trustee, cited *Bainbridge* v. *Downie,* 6 Mass. R. 253; *Mann* v. *Chandler,* 9 Mass. R. 335; *Sumner* v. *Williams,* 8 Mass. R. 198; *Scott* v. *Hancock,* 13 Mass. R. 162; *Caswell* v. *Wendell,* 4 Mass. R. 108.

The opinion of the Court was by

SHEPLEY J. — It is contended, that the answer to the fifth interrogatory is not sufficiently certain to entitle the trustee to a discharge. The principal had performed services for the intestate, and had received payments in part, and on the day of the service of the writ a further payment by note of seventy-five dollars. The inquiry is made, whether that note was given on that day before or after the service of the trustee process. The answer is, that it was given to the best of my

knowledge prior to the service. This might not be satisfactory, if the answer had come from one having certain knowledge of the business ; but it cannot be expected, that the administratrix should be possessed of the same degree of knowledge, and this appears to be the best evidence, which can be obtained.

The other services must be regarded according to the statements of the administratrix as performed for the State, and not for the intestate. And if the intestate or his personal representative made use of the map in compiling one claimed to be his own, that would not change the character of the original transaction, or give the principal any new rights, unless there was some new agreement. It might perhaps affect the copyright, but not the original contract, under which the services were rendered. The arrangement made by the attorney of the administratrix, after the death of the intestate, could not affect the decision of this question. For if the intestate was not liable to pay for the services at the time of the commencement of this process, no arrangement made after his death by which the principal first became entitled to payment could authorize a decision, that the intestate was liable at the time when the process was served upon him.

*Trustee discharged.*